IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 26, 2018 Session

**STATE OF TENNESSEE v. JERRY RAY OAKS**

**Appeal from the Criminal Court for Carter County**
**No. 23804     Lisa Rice, Judge**

————————————————————————

**No. E2017-02239-CCA-R3-CD**

————————————————————————

ROBERT L. HOLLOWAY, JR., J., dissenting.

I respectfully disagree with the majority's conclusion that the trial court erred in denying the defendant's motion to suppress. In my opinion, based on the proof presented at the suppression hearing and at trial, the trial court correctly determined that there were exigent circumstances justifying the warrantless blood draw. For the reasons that follow, I would affirm the defendant's conviction of vehicular homicide.

### *Timeline*

Sometime after 11 p.m. on February 13, 2016, Lieutenant William Buchanan of the Avery County, North Carolina Sheriff's Department happened upon the scene of a horrific, head-on motor vehicle accident in rural Carter County. At 11:10 p.m., after checking on the drivers, he called 9-1-1 to report the accident.

Firefighting crews from three fire departments and multiple Emergency Medical Services vehicles began to arrive. At 11:16 p.m., deputies with the Carter County Sheriff's Department (CCSD) arrived. After determining that a fatality had occurred, CCSD Lieutenant Larry Vaughn contacted the Tennessee Highway Patrol (THP) to request assistance.

At 11:25 p.m., THP Trooper Brad Proffitt arrived at the scene and made a quick assessment of the situation. Trooper Proffitt radioed his supervisor, Sergeant Jason Andes, a seventeen-year veteran with the THP who was en route to the scene, and informed Sergeant Andes that there was a fatality and that alcohol may have been involved.

At approximately 11:39 p.m., Sergeant Andes arrived, spoke to witnesses, and learned that the defendant was already en route by ambulance to Johnson City Medical Center (JCMC) in Washington County with critical, life-threatening injuries. Sergeant Andes contacted the THP Critical Incident Response Team (CIRT). Sergeant Andes knew that the defendant had left the accident scene sometime after 11:25 p.m. and before 11:39 p.m. and that it was approximately a thirty-minute drive from the accident scene to JCMC. He attempted to contact District Attorney General Tony Clark to get advice on how to proceed due to what he perceived to be a "lack of time" to obtain a search warrant for the defendant's blood. General Clark did not answer. Although Sergeant Andes had not previously sought a search warrant for a blood draw, he had been trained on the process involved in drafting and obtaining such a warrant, and he had "observed another officer's obtaining a blood draw warrant." He estimated that it would take "well over an hour" to write the warrant, find a judge, get the warrant executed, get to the hospital, locate the defendant, serve the warrant, and obtain a blood draw. Sergeant Andes believed that once the defendant was taken into surgery, it would be too late to obtain a blood draw.

At approximately 11:55 p.m., only sixteen minutes after arriving at the scene, Sergeant Andes contacted Trooper William Shelton, who was on patrol in Washington County. He instructed Trooper Shelton to go to JCMC, try to talk to the defendant, and, if possible, obtain a blood sample.

At 11:59 p.m., the defendant arrived at JCMC.

At 12:03 a.m. on February 14, Trooper Shelton arrived at JCMC. At 12:13 a.m., he located the defendant in a trauma room where he was being attended by several medical personnel who were trying to stabilize the defendant so he could be taken to the operating room. After speaking with the charge nurse, Trooper Shelton filled out the required paperwork for a mandatory blood draw.

At 12:25 a.m., Registered Nurse April Douglas drew the defendant's blood.

At 12:28 a.m., medical personnel began "massive transfusion protocol" in an attempt to "resuscitate" the defendant. The defendant received seven units of fluid and four units of blood via a "rapid infuser" through a "central venous access" line between 12:28 a.m. and 12:45 a.m.

At 12:58 a.m., the defendant was taken to surgery.

## The Trial Court's Oral Ruling

At the end of the suppression hearing, the trial court made an oral ruling. The trial court implicitly accredited the testimony of the witnesses who testified at the suppression hearing, including Sergeant Andes. The trial court found that: (1) law enforcement officers "knew they had a short period of time before this very critically injured person was going to be taken back to surgery"; (2) "[i]t takes minutes to get to the scene, assess the circumstances, [and] handle the emergencies that are taking place"; (3) Sergeant Andes' attempt to contact the District Attorney General "shows a good faith effort to get proper guidance on what to do"; (4) "[t]he information that Sergeant Andes had amassed from his seventeen years of experience in this job and from being on the scene was that [there were] very serious injuries" to the defendant"; and (5) "rather than go himself or send Trooper Proffitt[,]" Sergeant Andes "had the foresight based on his best judgment to radio Trooper Shelton" and order him "to get to [JCMC] as quickly as he could."

In applying the law to the facts, the court concluded that, based on the totality of the circumstances existing at the time the decision was made to seek a warrantless blood draw, there was "an objectively reasonable belief that there was compelling need to act and insufficient time to obtain a warrant." The trial court concluded that the "exigent circumstances exception" applied because the "urgent need for immediate action" was "too compelling to impose upon governmental actors the attendant delay that accompanies obtaining a warrant."

## *Analysis*

"Exigent circumstances are those in which the urgent need for immediate action becomes too compelling to impose upon governmental actors the attendant delay that accompanies obtaining a warrant." *State v. Meeks*, 262 S.W.3d 710, 723 (Tenn. 2008) (footnote omitted). A reviewing court must determine "whether the circumstances g[a]ve rise to an objectively reasonable belief that there was a compelling need to act and insufficient time to obtain a warrant." *State v. Reynolds*, 504 S.W.3d 283, 304-05 (Tenn. 2016) (quoting *Meeks*, 262 S.W.3d at 723) (alteration in original). "Mere speculation is inadequate; rather, the State must rely upon specific and articulable facts and the reasonable inferences drawn from them." *Meeks*, 262 S.W.3d at 723-24 (footnotes omitted). "To determine whether a law enforcement officer faced an emergency that justified acting without a warrant," courts look to "the totality of the circumstances." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013). If, based on the totality of the circumstances, officers in drunk-driving investigations cannot "reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search," then an exception to the constitutional mandate that officers must obtain a search warrant applies. *Id*. at 152.

In my opinion, the circumstances articulated by Sergeant Andes "g[a]ve rise to an objectively reasonable belief that there was a compelling need to act and insufficient time to obtain a warrant." *Reynolds*, 504 S.W.3d at 304-05. Trooper Shelton located the defendant at JCMC at 12:13 a.m. and obtained a draw of the defendant's blood at 12:25 a.m., only three minutes before the defendant began receiving a massive transfusion of blood and fluids and thirty-three minutes before the defendant was taken to surgery. If Sergeant Andes had delayed his decision to order Trooper Shelton to seek a warrantless blood draw, the efficacy of the search would have been undermined. *See McNeely*, 569 U.S. at 149. Further, contrary to the majority opinion's implication that the officers should have made an effort to seek a warrant by contacting a Washington County judge, the basic underpinning of the exigent circumstance exception to the warrant requirement is that law enforcement officers are not required to seek a warrant due to "a compelling need to act and insufficient time to obtain a warrant." *See Meeks*, 262 S.W.3d at 723. The majority opinion is correct that the defendant's need for surgery, the possibility of the defendant receiving a blood transfusion, and the seriousness of the crash do not, in isolation, establish exigent circumstances. However, when all these facts are viewed in the totality of the circumstances, as we are required to do when reviewing a trial court's suppression decision, *see id.*, these facts and others emphasized in this opinion support the trial court's conclusion that exigent circumstances existed in this case.

### *Conclusion*

Based on the totality of the circumstances that existed at the time Sergeant Andes ordered Trooper Shelton to go to JCMC, the trial court determined that, from an objective viewpoint, there was an urgent need to act in obtaining a blood draw and insufficient time to obtain a search warrant. Sergeant Andes made a reasonable decision to order Trooper Shelton to go JCMC and attempt to get a blood draw based on the totality of the circumstances known to him at the time the decision was made. In my opinion, the trial court's decision to deny the motion to suppress was fully supported by the evidence presented at the suppression hearing. I would affirm the defendant's conviction of vehicular homicide.

_____
ROBERT L. HOLLOWAY, JR., JUDGE